**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**DANIEL SCOTT THOMAS, Elector for the**                 **PLAINTIFFS**
**State of California, who is nominated to vote**
**in the Electoral College and is pledged to vote**
**for Candidate Alan Keyes for President of the**
**United States, ET AL.**

**VS.**                      **CIVIL ACTION NO. 2:08cv241 KS-MTP**

**DELBERT HOSEMANN, in his official**
**capacity as the Secretary of State for the**
**State of Mississippi**                      **DEFENDANT**

**MEMORANDUM OF AUTHORITIES**
**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**COMES NOW** the Defendant, Secretary of State Delbert Hosemann (referred to as "the

State" or "Secretary Hosemann"), in his official capacity in the above styled case and files this

Memorandum of Authorities in Support of Defendant's Motion to Dismiss, stating as follows:

**BACKGROUND**

On November 3, 2008, one day before the U.S. Presidential election, Plaintiffs filed the

present Complaint for Declaratory Judgment and Expedited Discovery. Specifically, Plaintiffs

seek the following relief: (1) a declaratory judgment that "the qualifications of all candidates for

the offices of President and Vice-President . . . as "Natural Born" citizens . . . is an essential

element in the right to vote of every American voter, the electors, and the members of Congress

who must count the electoral votes," (Compl. at 3), and (2) "an Order for expedited discovery . . .

requiring and enabling the DEFENDANT Secretary of State to obtain evidence of the

qualifications of every candidate for President and Vice-President as "natural born" . . . and

communicate such findings to the Secretaries of State in all other states[.]"[1] (Compl. at 3).

On November 4, 2008, the voters selected Senators Barack Obama and Joseph Biden as President Elect and Vice-President Elect, respectively. Members of the Electoral College will cast their votes on December 15, 2008. 3 U.S.C. § 7. In accordance with the outcome of the general election, each State in the Union selected electors for either Barack Obama and Joseph Biden or John McCain and Sarah Palin. See 3 U.S.C. § 1. The majority of the Plaintiff Electors in this case were nominated by and pledged to now-former Presidential candidate Alan Keyes. Additionally, only one elector, Virginia Chrisco of Oklahoma who is pledged to John McCain, will be casting an electoral vote because none of the other Plaintiff electors and their candidates were chosen by the voters. Notably, Elector Chrisco has no discretion under Oklahoma law regarding her vote. 26 Okl. St. Ann. §§ 10-102, - 109. She must vote for John McCain and Sarah Palin. Consequently, none of the Plaintiffs are electors who must contemplate voting for Barack Obama or John McCain.

Nevertheless, on November 12, 2008, Plaintiffs filed an Emergency Motion to Expedite Discovery, along with an accompanying Memorandum of Law in support of the Emergency Motion and the Complaint. The Emergency Motion alters the relief sought in the Complaint and offers a bit more detail. However, the greater detail in this instance serves only to shift this suit farther into the realm of implausibility. The Emergency Motion requests that this Court issue "an Order For Expedited Discovery declaring that the Plaintiffs are persons with a direct and tangible interest in the record of birth of Barack Obama, as required under the law of Hawaii, . . . and

---

[1]The relief Plaintiffs seek is highly unusual and suspect, requesting an "Order for Expedited Discovery commanding DEFENDANT to produce for DEFENDANT's own inspection and review, under seal, certified copies of the birth certificates . . . of every candidate[.]" (Compl. at 9).

authorizing them to issue immediate subpoenas . . . to obtain evidence of the birth[.]"
(Emergency Mot. for Expedited Disc. at 11).

Should that avenue prove futile, Plaintiffs request, in the alternative, "that the Court find
that the Defendant is a person with a direct and tangible interest in the record birth of Barack
Obama, as required under the law of Hawaii, . . . . and further, that the Court order the Defendant
to immediately obtain by subpoena . . . evidence of the qualifications of each candidate . . . and
furnish its conclusion concerning same to the public and every other state no later than December
9[.]" (Emergency Mot. for Expedited Disc. at 11). Plaintiffs reiterated their requested relief in a
letter to Magistrate Judge Parker dated November 17, 2008, which states as follows:

> We are seeking authority to immediately issue a subpoena for the production of a
> long form "vault" certificate of live birth from the register of vital statistics in
> Hawaii. We have been informed that Hawaii will accept a subpoena issued upon
> an order of th court, provided the order finds that either the Plaintiffs or the
> Defendant have a "direct and tangible interest in the record," as provided in
> Hawaii Statute 338-18(b)(9). Therefore, in the event your Honor grants all or part
> of the requested relief, we request that you include such language in your order.

(Ex. 1, Letter to Judge Parker dated Nov. 17, 2008).

While Plaintiffs' passions and intentions may be genuine, their claims are patently
frivolous. Plaintiffs are asking a federal district court in Mississippi to interpret Hawaiian law,
finding that either the Plaintiffs or the Secretary of State of Mississippi are interested parties that
may obtain the Hawaiian birth certificate of Barack Obama. Further, Plaintiffs petition the Court
to endow them or the Secretary of State with subpoena power and to compel the Secretary of
State to obtain, examine and disclose the birth certificate of Barack Obama. For numerous
reasons, some of which are discussed below, this Court should dismiss the instant Complaint and
Emergency Motion for Expedited Discovery.

## LEGAL ARGUMENT

The State presents the instant motion pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, respectively. The State submits that it is entitled to dismissal on all counts because Plaintiffs cannot obtain any relief against it, even if all well-pleaded factual allegations in Plaintiffs' Complaint are assumed to be true. Jones v. Greninger, 188 F.3d 322, 324 (5th Cir.1999).

As discussed below, the Court has several grounds upon which to dismiss Plaintiffs' claims. The State will show (1) that it is entitled to the immunity from suit recognized by the Eleventh Amendment to the Constitution of the United States; (2) that Plaintiffs' lack standing to pursue their claims and/or their claims are moot; (3) that this Court lacks subject matter jurisdiction; and (4) that Plaintiffs fail to state a claim upon which relief can be granted. The State will address each of these arguments in turn.

## I.     Plaintiffs' Claims are Barred by the Eleventh Amendment.

Plaintiffs sued the Secretary of State in his official capacity, seeking declaratory and, primarily, mandatory injunctive relief. As discussed below, the Secretary of State is entitled to the immunity from suit recognized in the Eleventh Amendment to the United States Constitution. See Alden v. Maine, 527 U.S. 706, 712-13 (1999). The Eleventh Amendment provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.[2]  Absent waiver or a valid abrogation of the State's immunity by

Congress, the State may not be sued in federal court regardless of the relief requested.  Green v.

Mansour, 474 U.S. 64, 68 (1986); Martinez v. Texas Dep't of Criminal Justice, 300 F.3d 567,

573 (5th Cir. 2002).

This immunity extends to state agencies, departments and other arms of the state.  Puerto

Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993); Richardson v.

Southern University, 118 F.3d 450, 452 (5th Cir. 1997).  Equally, Eleventh Amendment

immunity extends to state officials acting within their official capacities.  See Will v. Michigan

Dep't of State Police, 491 U.S. 58, 66-71 (1989); Carter v. Mississippi Dep't of Human Servs.,

No. 3:05cv190 HTW-JCS, 2006 WL 2827691, at *2 (S.D. Miss. Sept. 29, 2006) (Wingate, J.).

Congress has not abrogated and Mississippi has not waived its Eleventh Amendment or

sovereign immunity in the present context.

Secretary Hosemann is clearly a state official and enjoys the benefits of the Eleventh

Amendment.  E.g. O'Hara v. Mississippi Office of Secretary of State, No. 2:06cv180, 2007 WL

2071796 at *3-4 (S.D. Miss. July 17, 2007) (Starrett, J.).  Given the foregoing, the State will

address Plaintiffs' claims.

A.    State Claim

Plaintiffs seek mandatory injunctive relief against the State premised entirely upon the

interpretation and application of state law.  Specifically, Plaintiffs ask this Court to interpret and

---

[2]The Supreme Court "[h]as consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state."  Edelman v. Jordan, 415 U.S. 651, 662-63 (1974); Lakshman v. Mason, No. 3:05cv151 HTW-JCS, 2006 WL 2827683, at *3 (S.D. Miss. Sept. 30, 2006). (Wingate, J.).

apply the law of Hawaii to the Secretary of State for Mississippi.[3]  See discussion supra at 2-3.

Plaintiffs' claim is barred by the Eleventh Amendment.  As declared by the Supreme Court in

Pennhurst State Sch. & Hosp. v. Halderman:

> A federal court's grant of relief against state officials on the basis of state law,
> whether prospective or retroactive, does not vindicate the supreme authority of
> federal law. On the contrary, it is difficult to think of a greater intrusion on state
> sovereignty than when a federal court instructs state officials on how to conform
> their conduct to state law. Such a result conflicts directly with the principles of
> federalism that underlie the Eleventh Amendment.

465 U.S. 89, 106 (1984).  The Fifth Circuit has held that a plaintiff's state law claims "are not

cognizable in a proceeding under Ex parte Young because state officials continue to be

immunized from suit in federal court on alleged violations of state law brought under the federal

courts' supplemental jurisdiction."  Earles v. State Bd. of Certified Public Accountants of La.,

139 F.3d 1033, 1039 (5th Cir. 1998) (citing Pennhurst at 103-21); see Mississippi Surplus Lines

Ass'n v. Mississippi, 384 F. Supp. 2d 982, 985-86 (S.D. Miss. 2005) (Lee, J.).  Clearly, the

Eleventh Amendment unequivocally bars Plaintiffs' state law claim against Secretary Hosemann.

B.    Federal Claim

Discerning a federal claim in Plaintiffs' Complaint is a challenge at best.  Indeed, it does

not appear that Plaintiffs allege a federal claim at all; thus, the Court's inquiry need proceed no

further.  Clearly, Plaintiffs' request that this Court enjoin Secretary Hosemann to subpoena

Barack Obama's birth certificate from Hawaiian officials is premised upon an interpretation and

---

[3]In their Memorandum of Law, Plaintiffs reference the broad statutory language of Miss. Code
Ann. § 23-15-211.1, providing that the Secretary of State has the "power and duty to gather sufficient
information concerning voting in elections in the state."  (Pl.s' Memo. of Law at 6).  This reference, of
course, is to state not federal law.  Additionally, such broad language does not grant Mississippi's
Secretary of State the authority or impose a duty to subpoena documents from another sovereign State.

application of state law not federal law.  Moreover, Plaintiffs do not identify any federal duty

owed by Secretary Hosemann to Plaintiffs, nor do Plaintiffs assert the violation of federal law by

Secretary Hosemann.[4]  Notwithstanding Plaintiffs' failure to allege a federal claim, the State,

from an abundance of caution, will attempt to identify a federal claim and respond to it.

Between the filing of the Complaint on November 3 and the filing of the Emergency

Motion for Expedited Discovery on November 12, the relief sought by Plaintiffs changed,

probably due to the outcome of the general election.  Piecing together the Complaint, the

Emergency Motion and the Memorandum of Law, the most that can be made for a potential

federal claim is that Plaintiffs seek a declaration that the "natural born citizen" qualification for

President is encompassed somewhere within the fundamental right to vote, (Compl. at 3), that the

electors (apparently whether selected in the general election or not) have the right to challenge

the qualifications of President Elect Barack Obama, (Pl.s' Memo. of Law at 5-6), and that

Secretary Hosemann, by failing to obtain Barack Obama's birth certificate, has injured Plaintiffs

in the exercise of their constitutional right or duty.  (Pl.s' Memo. of Law at 6; Pl.s' Emergency

Mot. for Expedited Disc. at 11).  Even affording Plaintiffs' such benefit of the doubt, Plaintiffs'

claim against the State is barred by the Eleventh Amendment.

The immunity analysis begins with the assumption that Plaintiffs' official capacity

claims, which act as claims against the State,[5] are barred by the Eleventh Amendment.  To

---

[4]Notably, Plaintiffs do not invoke 42 U.S.C. § 1983 or any other federal cause of action, nor
could they.  See Berg v. Obama, 574 F. Supp. 2d 509, 522 (E.D. Pa. 2008) (finding that the Natural Born
Citizen Clause does not confer an individual right on citizens or voters).

[5]By suing Secretary Hosemann in his official capacity for declaratory and mandatory injunctive
relief relating to access to Barack Obama's birth certificate, Plaintiffs are quite plainly seeking to compel
the State to act; thus, Plaintiffs' official capacity claims are claims against the sovereign.  See Pennhurst

overcome this bar, Plaintiffs must show that their suit fits within the narrow exception carved out in Ex parte Young, 209 U.S. 123 (1908). In Young, the Supreme Court examined, *inter alia*, whether the Attorney General of Minnesota could be sued in federal court, consistent with the Eleventh Amendment, where the plaintiffs sought to enjoin the Attorney General from enforcing a state enactment alleged to be unconstitutional. 209 U.S. at 126-33.

In holding that the Eleventh Amendment did not impede such suit, the Court reasoned as follows:

> If the act which the state attorney general seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States.

Id. at 159-60. Addressing the Young holding in a later case, the Supreme Court explained that "[t]his holding was based on a determination that an unconstitutional state enactment is void and that any action by a state official that is purportedly authorized by that enactment cannot be taken in an official capacity since the state authorization for such action is a nullity." Papasan v. Allain, 478 U.S. 265, 276 (1986)

Given these considerations, the Supreme Court has specifically limited the application of Young, stating that "[i]n accordance with its original rationale, *Young* applies only where the underlying authorization upon which the named official acts is asserted to be illegal." Papasan, 478 U.S. at 277. Additionally, even where certain cases meet the formal Young requirements, the Supreme Court limits the Young fiction to "cases in which a violation of federal law by a

_____

State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02, n. 11 (1984).

state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law[.]" Id. at 277-78.

Plaintiffs may only invoke the Young fiction if they seek (1) to prospectively enjoin (2) a state official (3) from acting pursuant to the authority granted by an unconstitutional state enactment (4) where the violation of federal law is ongoing and (5) where such injunction will directly end the violation of federal law. When viewed in its entirety, the Young exception is quite narrow. Should a claim fail to satisfy each requirement of the exception, the Eleventh Amendment will bar such claim.

First, Plaintiffs do not challenge a state enactment as being unconstitutional; rather, Plaintiffs petition this Court to enjoin Secretary Hosemann to subpoena documents from Hawaii pursuant to that State's law and to afford the benefits of state law to Plaintiffs. Plaintiffs seek to drag the State into federal court by transmogrifying a claim premised solely on state law (of which Plaintiffs seek the benefit) into federal constitutional and statutory claims for declaratory and injunctive relief. As such, Plaintiffs cannot invoke the Young exception because this matter does not involve an unconstitutional state enactment or the kind of claim that would require a tipping of the balance away from the constitutionally recognized immunity of the State toward the need to vindicate federal rights as the supreme law of the land. See Pennhurst, 465 U.S. at 105-06.

Second, Plaintiffs do not allege an ongoing violation of federal law that can be reviewed by this Court. Plaintiffs appear to assert that the right to vote includes the right to vote for a qualified candidate, i.e. a natural born citizen. (Compl. at 3). However, at least one district court

has found that "[t]he presence of some allegedly ineligible candidate on the ballot would not seem to impair th[e] right [to vote] in the least, no matter how that candidate performs in the election." Hollander v. McCain, 566 F. Supp. 2d 63, 68-69 (D.N.H. 2008) (discussing Gottlieb v. Fed. Elec. Comm'n, 143 F.3d 618, 622 (D.C. Cir. 1998) (finding that the inclusion of a rival candidate does "not impede the voters from supporting the candidate of their choice"). Additionally, a separate district court directly held that the Natural Born Citizen Clause does not confer an individual right on citizens or voters. Berg v. Obama,574 F. Supp. 2d 509, 522 (E.D. Pa. 2008). Plaintiffs have presented no authority to suggest that a failed candidate for elector (or public office) or even an elector that is obligated to vote for a candidate under state law possesses a federal right to vote for a qualified candidate. See Robinson v. Bowen, 567 F. Supp. 2d 1144, 1146 (N.D. Cal. 2008) (finding that a mere candidate hoping to become an elector has no greater stake in the matter than a voter, who has no right to vote for an eligible candidate) (citing Hollander, 566 F. Supp. 2d 63) ("McCain's candidacy for the presidency, whatever his eligibility, is 'hardly a restriction on voters' rights' because it in no way prevents them from voting for somebody else.").

Plaintiffs' also fail to show that they possess a federal right to challenge the qualifications of the President Elect. Indeed, federal law provides that Congress shall be the forum for resolution of any dispute involving the qualifications of the President Elect, not failed candidates for public office, electors or those electors obligated by state law to vote for a particular candidate. 3 U.S.C. § 15; see U.S. Const. amends. XII and XX, § 3; Robinson, 567 F. Supp. 2d at 1146-47. Equally, Plaintiffs have not identified any federal law entitling them to obtain the birth certificate of Barack Obama.

10

Most importantly, Plaintiffs do not, and cannot, identify any federal law requiring Secretary Hosemann to obtain the birth certificate of any candidate, nor can it be said that Secretary Hosemann has failed in any way to abide by State law that might have somehow encroached on any federal right held by Plaintiffs.  Indeed, Plaintiffs have failed even to identify a federal or state law that would empower Secretary Hosemann to subpoena, or otherwise obtain, the birth records of any candidate.[6]  The very idea that the Secretary of State for Mississippi can be hauled into federal court by these Plaintiffs seeking a mandatory injunction requiring the Secretary to subpoena documents from another State is repulsive to our federal system and particularly, to the Eleventh Amendment.

Finally, Plaintiffs cannot avail themselves of the Young exception because the Secretary of State does not have the authority to subpoena documents from the State of Hawaii, thus any injunction against Secretary Hosemann would not end the alleged violation of federal law, making him a nominal defendant.  See Young at 156-58.  In Okpalobi v. Foster, 244 F.3d 405 (5th Cir. 2001), the United States Court of Appeals for the Fifth Circuit, sitting *en banc*, confronted the issue whether the Governor and Attorney General of Louisiana were shielded from suit by the Eleventh Amendment in a private action in federal court challenging the constitutionality of a state statute creating a private cause of action against medical doctors performing abortions.  Recognizing that the suit would be barred absent application of the Young fiction, the Court set about recounting and analyzing Young's predecessors and progeny,

---

[6]As noted below, supra at 12, the Secretary of State does not oversee the qualifications of Presidential and Vice-Presidential candidates, nor even the qualifications of the State's Presidential electors.  That duty is shared by the members of the State Board of Election Commissioners, of which the Secretary of State in one member among three.

including decisions rendered by other federal courts.  Okpalobi, 244 F.3d at 411-416.

Before beginning its detailed analysis, the Fifth Circuit noted that "[i]t is against this background of the overriding importance of the Eleventh Amendment in limiting the power of the federal courts over the sovereignty of the several states, that we now consider whether the facts of this appeal can fit into the exception carved from the Eleventh Amendment in *Ex parte Young*, so as to allow the federal courts to enjoin [the state statute]."  Okpalobi, 244 F.3d at 411. At the end of its analysis, the *en banc* Court found that "[the Young] exception only applies when the named defendant state officials have *some connection with the enforcement of the act* and 'threaten and are about to commence proceedings' to enforce the unconstitutional act."  Id. at 416.  Because the governor and attorney general did not meet this two-pronged test (the statute provided a private right of action), the Young fiction did not apply, even though the plaintiff was seeking prospective injunctive relief regarding an allegedly unconstitutional statute.  Id. at 416-21.

Secretary Hosemann does not have the authority to secure Plaintiffs' alleged rights, i.e. no subpoena authority over the State of Hawaii nor any duty to seek any documents therefrom. Indeed, the Secretary of State possesses no authority over the qualifications of candidates for President and Vice President, such authority being vested in the political parties.  See Miss. Code Ann. §§ 23-15-771, -785(1).  Further, the State Board of Election Commissioners (not even the Secretary of State) possesses only the authority to oversee the qualifications of electors from Mississippi, which is not at issue in this case.  Miss. Code Ann. § 23-15-785(3).

A challenge to a state enactment pursuant to which the state official acts and against whom an injunction would be effective is necessary to invoke the Young fiction.  With Secretary

Hosemann being only a nominal defendant, no need exists to tip the balance away from the constitutional immunity of the states toward the need to vindicate federal rights and hold the State responsible to the supreme authority of the United States *in a federal forum*. See Pennhurst, 465 U.S. at 105-06.

Plaintiffs' claims are based on state law, and Plaintiffs' allegations do not identify an ongoing violation of federal law. As such, this action is prohibited by the Eleventh Amendment and not excepted by Young. Accordingly, the Secretary of State is immune from suit, and Plaintiffs' entire action should be dismissed.

## II.     Plaintiffs Lack Standing to Pursue Their Claims and/or Their Claims are Moot.

Plaintiffs do not present a justiciable case or controversy because they lack standing to pursue prospective equitable relief against the State, and their claims are moot. The United States Constitution, Article III, section 2, clause 1, requires an actual case or controversy to sustain federal jurisdiction. See Amar v. Whitley, 100 F.3d 22, 23 (5th Cir. 1996). "The case-or-controversy doctrines state fundamental limits on federal judicial power in our system of government." Allen v. Wright, 468 U.S. 737, 750 (1984). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975). Closely related to standing is mootness, described by the Supreme Court as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980). Standing and mootness must be addressed on a claim-by-claim basis. James v. City of Dallas, 254 F.3d 551, 563 (5th Cir. 2001) (citations omitted).

To show standing, Plaintiffs must: (1) have suffered injury in fact; (2) demonstrate a causal connection between the injury and the conduct complained of; and (3) show that a favorable decision will address plaintiff's injury.  United States v. Hays, 515 U.S. 737, 742-43, 115 S. Ct. 2431, 2435 (1995); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992).  "Injury in fact" requires a showing of an actual or imminent invasion of a legally protected interest, which is both concrete and particularized to the plaintiff herself.  Hays, 515 U.S. at 743; Lujan, 504 U.S. at 560.

With the exception of Elector Chrisco, supra at 2, all Plaintiffs were nominees for elector whose candidate failed to garner any electoral votes in their respective states.  Elector Chrisco is bound by Oklahoma law to cast her electoral vote for John McCain.  Supra at 2.  Whether Plaintiffs' claims are premised on an alleged right to vote for an eligible candidate or an alleged right to challenge the qualifications of the President Elect, Plaintiffs cannot establish the necessary elements for standing.  Recently, state and federal courts across the nation have considered challenges to the eligibility of Senators Barack Obama and John McCain to run for President premised on the Natural Born Citizen Clause.  None of these challenges have been successful, and theses decisions should guide this Court's inquiry.

The District Court for New Hampshire recently decided the issue of voter standing regarding challenges to the qualifications of candidates under the Natural Born Citizen Clause.  In Hollander v. McCain, the plaintiff, a Republican voter, challenged the eligibility of Senator John McCain as a candidate in the New Hampshire Republican Primary.  Hollander, 566 F. Supp. 2d 63, 66-67 (D.N.H. 2008).  The district court, however, found that the plaintiff lacked Article III standing, focusing on the voter's lack of injury in fact.  Id. at 67-89.  Discussing

Supreme Court precedent, the district court found that the plaintiff as a voter had not alleged an interest or suffered an injury different and distinct from that held by the general public. Id. (discussing Schlesinger v. Reservist Committee to Stop the War, 418 U.S. 208 (1974) ("Standing to sue may not be predicated upon an interest . . . which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share.")). Specifically, the district court held as follows:

> *Schlesinger* makes clear, then, that Hollander does not have standing based on the harm he would suffer should McCain be elected President despite his alleged lack of eligibility under Article II, § 1, cl. 4. That harm, "standing alone, would adversely affect only the generalized interest of all citizens in constitutional governance.

Hollander at 68.

The plaintiff also argued that his right to vote was being infringed. Id. at 68. The district court easily dispensed with this argument noting that "[t]he presence of some allegedly ineligible candidate on the ballot would not seem to impair that right in the least, no matter how that candidate performs in the election." Id. The district court's reasoning echoed that of the Circuit Court for the District of Columbia in Gottlieb v. Fed. Elec. Comm'n, 143 F.3d 618 (D.C. Cir. 1998). As explained by the Hollander Court, "the mere inclusion of a rival does 'not impede the voters from supporting the candidate of their choice' and thus does not cause the legally cognizable harm necessary for standing." Hollander at 69 (quoting and discussing Gottlieb, 143 F.3d at 622)). Additionally, the district court, relying on authority from several different Circuit Courts, concluded that any harm alleged by the plaintiff was only derivative of the harm experienced by his preferred candidate and thus not a legally cognizable injury. Hollander at 69 (citing and discussing, *inter alia*, Becker v. Fed. Elec. Comm'n, 230 F.3d 381 (1st Cir. 2000)).

Within two months of the <u>Hollander</u> decision the District Court for the Northern District of California decided <u>Robinson v. Bowen</u>, 567 F. Supp. 2d 1144 (N.D. Cal. 2008). The plaintiff, an elector pledged to Presidential candidate Alan Keyes (like the bulk of the instant Plaintiffs) sought an order removing Senator John McCain as a Presidential candidate from the California ballot. <u>Robinson</u>, 567 F. Supp. 2d at 1145. The district court, in a clear and succinct paragraph, explained that plaintiff, even as an elector, lacked standing to pursue his claim:

> Turning to the viability of the case at large, plaintiff has no standing to challenge Senator McCain's qualifications. Plaintiff is a mere candidate hoping to become a California elector pledged to an obscure third-party candidate whose presidential prospects are theoretical at best. Plaintiff has, therefore, no greater stake in the matter than a taxpayer or voter. *Hollander v. McCain*, 2008 WL 2853250 (D.N.H.2008). Neither plaintiff nor general election voters favoring the same candidate as plaintiff have in any way been prevented from supporting their preferred candidate. If plaintiff alleges that his prospects of becoming an elector would be enhanced absent Senator McCain's candidacy, any such claim would be wholly speculative. Moreover, plaintiff himself is not a candidate in competition with John McCain - the harm plaintiff alleges is not only speculative but also merely derivative of the prospects of his favored obscure candidate. *Gottlieb v. Federal Election Commission*, 143 F.3d 618, 622 (D.C.Cir.1998). His claimed injury is neither particularized nor actual and imminent. Plaintiff lacks standing to bring this lawsuit.

<u>Robinson</u> at 1146.

A month after <u>Robinson</u> the District Court for the Eastern District of Pennsylvania decided the case of <u>Berg v. Obama</u>, 574 F. Supp. 2d 509 (E.D. Pa. 2008). The plaintiff, a voter, sought an injunction prohibiting Senator Barack Obama from running for President and enjoining the Democratic National Convention from nominating him as its candidate premised on Senator Obama's alleged ineligibility pursuant to the Natural Born Citizen Clause. <u>Berg</u>, 574 F. Supp. 2d at 512. After thoroughly examining Supreme Court precedent, as well as Circuit Court and district court authority, the <u>Berg</u> Court found that "[t]he alleged harm to voters stemming from a

presidential candidates failure to satisfy the eligibility requirements of the Natural Born Citizen Clause is not concrete and particularized enough to constitute an injury in fact sufficient to satisfy Article III standing." Id. at 518.

The district court then more closely examined the decision in Hollander, concluding that even at the general election stage a voter could not establish an injury in fact premised on the right to vote for an eligible candidate:

> To reiterate: a candidate's ineligibility under the Natural Born Citizen Clause does not result in an injury in fact to voters. *Cf. Lance*, 127 S.Ct. at 1198 (voters did not allege harm sufficient to invoke the Elections Clause); *Ex parte Levitt*, 302 U.S. 633, 633, 58 S.Ct. 1, 82 L.Ed. 493 (citizen could not articulate harm under the Ineligibility Clause). By extension, the theoretical constitutional harm experienced by voters does not change as the candidacy of an allegedly ineligible candidate progresses from the primaries to the general election.

Berg at 520-21. Like Hollander and Robinson before, the Berg Court found that the plaintiff lacked standing to pursue his claims challenging the eligibility of a Presidential candidate based upon the Natural Born Citizen Clause.

Here, Plaintiffs find themselves in no better position than those in Hollander, Robinson and Berg. Indeed, the present Plaintiffs are in a worse position because the general election has occurred resulting in the selection of a slate of electors pledged to either Barack Obama or John McCain. Examining the injury in fact requirement, the would-be electors had no standing *prior* to the general election under the reasoning previously discussed, particularly that of Robinson; thus, the electors, now having been rejected by the voters, have even less of a claim to standing *after* the general election. Whether considered in terms of standing or mootness the result is the

same, a lack of personal, particularized interest or injury in the outcome of the suit.[7]

Plaintiffs have completely failed to identify a legally protected interest (state or federal) and an injury thereto that is concrete and particularized, i.e. there is no right to vote for an eligible candidate and no right by these Plaintiffs to challenge the qualifications of the President Elect. This, however, while sufficient, is not Plaintiffs' only failing concerning standing. Plaintiffs also fail to establish a causal connection between their alleged injury and the conduct of Secretary Hosemann.

In an attempt to show a causal connection, Plaintiffs argue as follows:

The nominated electors . . . who lost their nomination have a right to this evidence which could disqualify all electors for President Elect Obama in time for challenges to elector ballots in their respective state that must be completed December 9, 2008. . . . Further, failure to obtain this information robs the electors not nominated of their right to challenge the electors of President Elect Obama in state contests on the ballot.[8] . . .

Clearly, this legally protected interest is concrete and particularized. And clearly, it is actual and imminent. **A failure by DEFENDANT Secretary of State to obtain the information necessary to enable the PLAINTIFF electors to determine the "natural born" status of all candidates will be the cause of that injury.**

---

[7]While it is unclear whether Alan Keyes is suing in his capacity as a former Presidential candidate, such has no bearing on his lack of standing because his candidacy was utterly rejected by the voters. At best, Mr. Keyes' claims are moot because, at this stage, Congress is vested with the authority to pass upon the qualifications of President Elect Obama. Infra Part III. Even should Congress reject President Elect Obama, Vice-President Elect Biden would assume the role of President until Congress resolved the matter. Infra Part III; see U.S. Const. amend. XX, § 3.

Similarly, Elector Chrisco has no personal, particularized injury because she is obligated by Oklahoma state law to cast her electoral votes for John McCain, supra at 2; thus, she has no legal discretion or concern regarding the President Elect. Additionally, any harm she might claim is merely derivative of the harm to John McCain. See discussion supra at Part II.

[8]Mississippi selected the slate of electors pledged to John McCain, further evidence that Mississippi and Secretary Hosemann have no relationship to Plaintiffs' alleged injury.

(Pl.s' Memo of Law at 6-7) (emphasis added).  Of all Plaintiffs' arguments, this is perhaps the

most incredible.  Little analysis is needed to condemn this argument because its faults are explicit

on its face.  Secretary Hosemann cannot be faulted for failing to do something that is not required

of him.  Indeed, Plaintiffs ask this Court to endow Secretary Hosemann with the authority to

subpoena documents from Hawaii and then order Secretary Hosemann to exercise that power.

Mississippi's Secretary of State does not possess subpoena authority over Hawaiian officials, nor

does the Secretary owe any duty to any of the Plaintiffs involved in this case.[9]

Judge Posner, writing for the Seventh Circuit Court of Appeals, accurately exposed the

flaw in Plaintiffs' position:

> [I]f you have no right to demand assistance the failure to assist you is not an injury
> that will support a federal suit, even though such a failure may make the rights
> you do have, which include the right of political advocacy, less fruitful in
> achieving your goals.

Berg at 516 (quoting People for Organized Welfare and Employment Rights v. Thompson, 727

F.2d 167, 171-72 (7th Cir. 1984) (Posner, J.)).  Obviously, Secretary Hosemann owes nothing to

these Plaintiffs, nor is there any connection between Secretary Hosemann and the Presidential

candidates allegedly failing to allow Plaintiffs access to their birth records.  Thus, Plaintiffs have

failed to establish a causal connection between their alleged injury and the conduct of the State

and therefore, lack standing to pursue their claims.

Finally, Plaintiffs cannot show that a favorable decision by this Court would address

Plaintiffs' alleged injury.  Notably, this Court, like the State, does not possess subpoena authority

---

[9]Of course, Plaintiffs' request for declaratory relief regarding an alleged right to vote for an
eligible candidate presents no causal connection between the alleged injury and any conduct of Secretary
Hosemann and the State of Mississippi.

over the State of Hawaii or its officials, particularly given that his Court has no personal jurisdiction over Hawaii or its officials in this matter and given that such are non-parties located beyond this Court's territorial jurisdiction. See Fed. R. Civ. P. 45(b)(2); Natural Gas Pipeline Co. of America v. Energy Gathering, Inc., 2 F.3d 1397, 1406 (5th Cir. 1993) (finding that a federal court sitting in one district cannot issue a subpoena duces tecum to a non-party for the production of documents located in another district). Notwithstanding this issue, federal courts do not possess the authority, generally, to order mandatory injunction or mandamus type relief against state officials. E.g., Noble v. Cain, 123 Fed. Appx. 151, 152 (5th Cir. 2005). Because Plaintiffs cannot show how the State or this Court could require the State of Hawaii to release the birth certificate of Barack Obama, Plaintiffs lack standing to pursue their claims.

## III. This Court Lacks Subject Matter Jurisdiction to Hear Plaintiffs' Claims.

As the party asserting jurisdiction, Plaintiffs bear the burden of establishing subject matter jurisdiction. Kokkonen v. Guardian Liberty Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). In this instance, the Constitution and the laws of the United States have vested Congress with the authority to determine the qualifications of the President Elect and to resolve, in the first instance, any disputes regarding his eligibility to serve as President. Robinson, 567 F. Supp. 2d at 1146-47.

Article II, section 1, clause 2 of the federal Constitution provides that each state shall appoint, as provided by state law, the number of electors to which the respective state is entitled. In Mississippi, the state convention for the national parties select a slate of electors pledged to that party's nominated candidate. Miss. Code Ann. § 23-15-771. Through general election, the voters elect or "appoint" the nominated electors of their chosen Presidential and Vice-

Presidential candidate, e.g. Mississippi voted for the state electors selected by the Republican Party and pledged to John McCain and Sarah Palin. Miss. Code Ann. § 23-15-781; see 3 U.S.C. § 1.

According to federal law, any controversy over the appointment of any or all *electors* as allowed under state law must be resolved by December 9, 2008. See 3 U.S.C. § 5. Mississippi law vests the State Board of Election Commissioners with oversight of the electors, "who shall be qualified voters of this state, equal in number to the number of presidential electors to be chosen," and who execute a statement agreeing to serve as an elector and cast their ballot for the candidate to whom they are pledged. Miss. Code Ann. § 23-15-785(3). Neither the State Board of Election Commissioners nor the Secretary of State oversees the qualifications of the Presidential and Vice-Presidential candidates.[10]

The chosen electors meet on December 15, 2008, to cast their ballots for President and Vice President. 3 U.S.C. § 7. The Twelfth Amendment provides the manner in which the electors elect the President and Vice-President:

> The Electors shall meet in their respective states and vote by ballot for President and Vice-President . . . they shall name in their ballots the person voted for as President, and in distinct ballots the person voted for as Vice-President, and they shall make distinct lists of all persons voted for as President, and of all persons voted for as Vice-President, and of the number of votes for each, which lists they shall sign and certify, and transmit sealed to the seat of the government of the United States, directed to the President of the Senate;--The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted . . . .

U.S. CONST. amend. XII. Federal legislation provides for counting the electoral votes by

---

[10]Plaintiffs do not challenge under state law the qualifications of any of the elector's chosen by Mississippi's voters.

Congress on January 6, 2009, and a mechanism for objecting:

> Upon such reading of any such certificate or paper [of the vote], the President of the Senate shall call for objections, if any. Every objection shall be made in writing, and shall state clearly and concisely, and without argument, the ground thereof, and shall be signed by at least one Senator and one Member of the House of Representatives before the same shall be received. When all objections so made to any vote or paper from a State shall have been received and read, the Senate shall thereupon withdraw, and such objections shall be submitted to the Senate for its decision; and the Speaker of the House of Representatives shall, in like manner, submit such objections to the House of Representatives for its decision . . . .

3 U.S.C. § 15. The Twentieth Amendment further provides as follows:

> If a President shall not have been chosen before the time fixed for the beginning of his term, or if the President elect shall have failed to qualify, then the Vice President elect shall act as President until a President shall have qualified; and the Congress may by law provide for the case wherein neither a President elect nor a Vice President elect shall have qualified, declaring who shall then act as President, or the manner in which one who is to act shall be selected, and such person shall act accordingly until a President or Vice President shall have qualified.

U.S. Const. amend. XX, § 3. Clearly, the matter of Presidential eligibility is left to Congress.

In Robinson v. Bowen, supra at 16, the district court examined the same federal law discussed above and offered this apt conclusion:

> It is clear that mechanisms exist under the Twelfth Amendment and 3 U.S.C. § 15 for any challenge to any candidate to be ventilated when electoral votes are counted, and that the Twentieth Amendment provides guidance regarding how to proceed if a president elect shall have failed to qualify. Issues regarding qualifications for president are quintessentially suited to the foregoing process. Arguments concerning qualifications or lack thereof can be laid before the voting public before the election and, once the election is over, can be raised as objections as the electoral votes are counted in Congress. The members of the Senate and the House of Representatives are well qualified to adjudicate any objections to ballots for allegedly unqualified candidates. **Therefore, this order holds that the challenge presented by plaintiff is committed under the Constitution to the electors and the legislative branch, at least in the first instance. Judicial review-if any-should occur only after the electoral and Congressional processes have run their course.** *Texas v. United States*, 523

22

U.S. 296, 300-02, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998).

Robinson, 567 F. Supp. 2d at 1147 (emphasis added). Plainly, this Court lacks subject matter jurisdiction, at this stage, to hear any matter that concerns the eligibility of President Elect Barack Obama.

**IV.    Plaintiffs' Complaint does not Support Subject Matter Jurisdiction and does not State a Claim Upon Which Relief can be Granted.**

Plaintiffs do not claim a right to recover under the constitution sufficient to support subject matter jurisdiction or to state a claim upon which relief can be granted. To support federal jurisdiction, the Complaint must be drawn in such a way "so as to claim a right to recover under the Constitution and laws of the United States." Bell v. Hood, 327 U.S. 678, 681 (1946); Suthoff v. Yazoo County Idus. Dev. Corp., 637 F.2d 337, 339 (5th Cir. 1981). While federal courts should exercise jurisdiction where the Complaint "seek[s] recovery directly under the Constitution or laws of the United States," Bell, 327 U.S. at 681, jurisdiction does not exist "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." Id. at 682-83; Suthoff, 637 F.2d at 339. A claim is considered frivolous or insubstantial where such claim "has no plausible foundation or which is clearly foreclosed by a prior Supreme Court decision." Bell v. Heatlh-Mor, Inc., 549 F.2d 342, 344 (5th Cir. 1977). As discussed below, Plaintiffs have failed to establish subject matter jurisdiction.

Rule 12(b)(6) requires dismissal of "claims based upon invalid legal theories." Breen v. Texas A&M Univ., 485 F.3d 325, 336 (5th Cir. 2007) (citing Nietzke v. Williams, 490 U.S. 319, 327 (1989). It also requires dismissal if the plaintiff does not plead "enough facts to state a claim

to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007).

"Factual allegations must be enough to raise a right to relief above the speculative level,…on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" Id. at

1965. However, "conclusory allegations or legal conclusions masquerading as factual

conclusions will not suffice to prevent a motion to dismiss." Fernandez-Montes v. Allied Pilots

Ass'n, 987 F.2d 278, 284 (5th Cir. 1993).

     A cursory review of the Complaint, the Emergency Motion and the Memorandum of Law

reveals that Plaintiffs do not premise their suit on any remotely identifiable federal right or cause

of action. Plaintiffs doe not sue under 42 U.S.C. § 1983 or any other federal statute. They

cannot identify any protected right to vote for an eligible candidate or to challenge the

qualifications of the President Elect. Plaintiffs wrongfully focus their attention on petitioning

this Court to require Secretary Hosemann to subpoena documents from Hawaii, while utterly

failing to identify any federal or state law, authority or duty that would require or even permit

such action by Mississippi's Secretary of State or this Court.

     Simply put, Plaintiffs do not plead a direct and independent federal cause of action, much

less one that would support relief. Such pleading is insufficient to support federal jurisdiction

because it lacks a federal legal basis and therefore, should be dismissed. See Bell v. Hood, 327

U.S. at 682-83 (finding that jurisdiction does not exist "where the alleged claim under the

Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose

of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous"); Bell v.

Heatlh-Mor, Inc., 549 F.2d at 344 (finding that a claim is considered frivolous or insubstantial

where such claim "has no plausible foundation or which is clearly foreclosed by a prior Supreme

Court decision"). Even if jurisdictional support could be identified, Plaintiffs cannot state a claim upon which relief can be granted for the reasons discussed herein. See Berg v. Obama, 574 F. Supp. 2d 509, 522 (E.D. Pa. 2008) (finding that the Natural Born Citizen Clause does not confer an individual right on citizens or voters); see, e.g., Noble v. Cain, 123 Fed. Appx. at 152 (noting that federal courts do not possess the authority to order mandamus type relief against state officials).

## CONCLUSION

Based on the preceding arguments, the State respectfully requests that this Court grant the State's motion and dismiss Plaintiffs' claims in their entirety.

Wherefore, premises considered, the State respectfully requests that this Court GRANT the present Motion to Dismiss.

Respectfully submitted, this the 24th day of November, 2008.

By:     JIM HOOD, ATTORNEY GENERAL

s/ Shawn S. Shurden
SHAWN S. SHURDEN, MSBN 99678
SPECIAL ASSISTANT ATTORNEYS GENERAL
CIVIL LITIGATION DIVISION

*Counsel for the Defendant*

Civil Litigation Division
Office of Attorney General
Post Office Box 220
Jackson, Mississippi 39205
Telephone: (601) 359-3680

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I, Shawn S. Shurden, a Special Assistant Attorney General for the State of Mississippi, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

James D. Bell, Esq.
318 South State Street
Jackson, Mississippi 39201

J. Thomas Smith
1816 Old Natchez Trace
Franklin, Tennessee 37069

Philip R. Boardman, Esq.
2017 Cunningham Drive, Suite 210
Hampton, Virginia 23666

James Hochberg, Esq.
745 Fort Street, Suite 1450
Honolulu, Hawaii 96183

This the 24th day of November, 2008.

s/ Shawn S. Shurden
SHAWN S. SHURDEN